EELLS *against* DAY.

</div>

|  | 4 | 95 |
| --- | --- | --- |
|  | 75 | 534 |

A party claiming a debt on book, consisting of entries made at different times, through a period of many years, having, at the same time, brought suits by attachment, and recovered judgments, on such book debt, and on two promissory notes, against the same defendant ; a third person, interested to impeach the judgment in the book debt action, offered evidence to prove, that the notes were given without consideration, and were fraudulent, for the purpose of raising a presumption, that the book

debt also was fraudulent : Held, that such evidence was inadmissible for that purpose.

To transfer a title to land by execution, it is necessary, that the return of the officer should point out the location of the land, and describe it, by definite boundaries. Therefore, where the return described the land levied on no otherwise than by specifying the quantity, and calling it the estate of the debtor, it was held to be fatally defective.

Where it appeared, in an action of ejectment, that the person under whom the plaintiff claimed, had purchased, and paid for, the land in question, and had been many years in possession of it ; but it did not appear, otherwise than as these facts furnished a presumption, that any deed had been given ; and none had been recorded ; it was held, that such person had no legal title, and the plaintiff, of course, could derive none from him.

This was an action of ejectment, for two pieces of land.

The plaintiff claimed title to the demanded premises, by the levy of an execution against *James Day.* The defendant also claimed title, by virtue of the levy of an execution against the same *James Day,* of a prior date. The plaintiff claimed, that the judgment on which the defendant's execution issued, was fraudulent and void. To shew that such judgment was fraudulent, the plaintiff offered evidence tending to prove, that at the same time the defendant prayed out the writ of attachment in the suit in which his execution issued, which was an action of book debt, he also obtained two other writs of attachment, on two promissory notes, one dated *March* 25th, 1819, for the sum of 786 dollars, and the other for 400 dollars ; and that these notes were given fraudulently, and without any consideration, for the purpose of enabling the defendant to cover all the debtor's estate by attachment. The defendant's account consisted of entries made at different times from 1802 to 1818. To the admission of this evidence, for the purpose stated, the defendant objected. The judge permitted the two notes, and all proceedings on them, to be given in evidence, to raise a presumption, or prove, that they were given to extinguish the book debt ; but he would not suffer the plaintiff to impeach the consideration of the notes, to shew, that the judgment in the book debt action was fraudulent.

The plaintiff also claimed, that the defendant's levy upon one of the pieces of land in question, *viz.* a tract of four acres and an half, was void, for want of a sufficient description of the estate levied upon ; and that the plaintiff had, of course, a right to recover that tract of land, whether the defendant's judgment was fraudulent or not. The sheriff's return, after

describing two lots levied upon, proceeded as follows : " And
one other lot, containing four acres and one hundred rods, be
the same more or less, the proper estate of the same *James*
*Day*."

The plaintiff also offered evidence to prove, that *James*
*Day* had purchased the last-mentioned lot of *John Waterman*,
and paid for it ; and had been many years in possession of it ;
but had not put upon record the deed by which he made the
purchase. He did not, however, offer any evidence, tending
to prove the existence of any such deed, otherwise than that
a sum of money had been paid by *James Day*, on account of
it. On this account, the defendant claimed, that the plaintiff
could not recover.

These questions of law being submitted, by the parties, to
the judge, he charged the jury as follows : " The plaintiff
claims, that the defendant's levy is void ; first, because the
judgment, on which the execution issued, was fraudulent ;
secondly, because the levy as to the four acres and one hun-
dred rods, is void for uncertainty in description. As to the
first question, whether there be fraud in obtaining the judg-
ment on which the defendant relies, *that* is a matter of fact
for you to decide. The second question is a matter of law ;
and on this point I have to instruct you, that the levy of the
defendant's execution is not void for uncertainty of descrip-
tion as to the four acres and one hundred rods." The jury
having returned a verdict for the defendant, the plaintiff mov-
ed for a new trial, on the ground that the evidence offered by
him was improperly excluded, for the purpose for which it
was offered, and also on the ground of a misdirection.

*Goddard* and *Law*, in support of the motion, contended, 1.
That the evidence offered by the plaintiff to shew, that the
notes were given without consideration, and were fraudulent,
for the purpose of affording an inference that the judgment on
which the execution issued, was fraudulent, ought to have
been received. It had a powerful tendency to shew the *in-*
*tention* of the parties, and the *state of their minds*, at the time
of the transaction. The law is liberal with respect to the
proof of *fraud ;* which seeks concealment and defies direct
evidence. Every circumstance tending to shew fraud, is ad-
missible for that purpose. The jury are permitted to infer
one act of fraud from another, in cases wherein the court
could not make the inference. *Swift's Evid.* 153. & seq. *Gib-*

son v. *Hunter*, 2 *H. Bla.* 288. *Gardner* v. *Preston*, 2 *Day* 205. 208. *Beal* v. *Thatcher*, 3 *Esp. Rep.* 194. *Allison* v. *Matthieu*, 3 *Johns. Rep.* 233. In the case last cited, even *subsequent* acts of fraud were admitted to shew the *intention* of the party in the transaction in question. In *Preston* v. *Griffin*, 1 *Conn. Rep.* 395. *Swift*, Ch. J. delivering the opinion of the court, said, " It may be shewn, that any one of several contemporaneous conveyances was fraudulent, to shew, or raise a presumption, that the conveyance in question was fraudulent." In the present case, the defendant brought three suits, at the same time, against *James Day* ; and the plaintiff offered to prove, that two of them were fraudulent, to shew, or raise a presumption, that the other one was so.

2. That the defendant acquired no title to the 4 acres, 100 rods, of land, by the levy of his execution, by reason of uncertainty in the description. The officer's return does not specify the town in which the land lies ; it does not designate the land, by any known name ; it does not describe it, by boundaries ; in short, it gives it no location whatever. No title can be acquired, by such a levy. *Pullen* v. *Birbeak*, *Carth.* 453. *Tate* & al. v. *Anderson*, 9 *Mass. Rep.* 92. *Barnes* & al. v. *Billington* & al. 4 *Day*, 86. n.

3. That if the plaintiff's evidence was improperly excluded, or if there was a mis-direction with respect to the validity of the defendant's title, a new trial ought not to be refused, on account of the alleged defect in the title of *James Day*, under whom the plaintiff claims. In the first place, it is incompetent for the defendant, claiming under the same title, to call its validity in question. But secondly, the plaintiff's title by the levy of his execution, is good, if *James Day* had *any* estate. By such levy, the plaintiff acquired a title to the estate which the debtor had. *Hitchcock* v. *Hotchkiss*, 1 *Conn. Rep.* 470. The debtor had purchased the land, and taken possession of it. It would be going too far to say, that he had *no title*, because his deed was not *recorded*. The case of *French* v. *Gray*, 2 *Conn. Rep.* 92. was decided by a majority of one only ; the decision was unsatisfactory to the profession, at the time ; and it has not since been regarded as law, either by the bench, or the bar.

*Cleaveland* and *Hill*, contra, contended, 1. That the judge decided correctly, in rejecting evidence of want of consideration in two notes, for the purpose of proving that the defend-

ant's book account was fraudulent. There was no connex-
ion between the debt evidenced by the notes, and that on
book; and the character of the former could not affect the
latter. *Preston* v. *Griffin,* 1 *Conn. Rep.* 393. *Finnerty* v. *Tip-*
*per,* 2 *Campb.* 72. The cases in which evidence of the con-
duct of one person, or of one transaction, has been received,
to give a character to the conduct of another person, or to an-
other transaction, are those in which there has been some
conspiracy or combination between the persons, or some
connexion between the transactions.

2. That the levy of the defendant's execution on the lot of
4 acres, 100 rods, is not void for uncertainty in description.—
It is not necessary that the return should be more particular
than the description in a deed, or in an action of ejectment ;
in which cases parol evidence is admissible to direct the ap-
plication of the description : It will not be claimed, that the
land in question cannot be found. *Doolittle* & ux. v. *Blakes-*
*ley,* 4 *Day* 265. *Talbot* v. *Wheeler,* 4 *Day* 448. *Goodtille* d.
*Wright* v. *Otway,* 8 *East* 357. *Doe* d. *Stewart* v. *Denton,* 1
*Term Rep.* 11 *Cottingham* v. *King,* 1 *Burr.* 623. *Connor* v.
*West,* 5 *Burr.* 2672.

3. That whether the defendant's levy is void or not, the
plaintiff cannot recover ; because the defendant is in posses-
sion of the lot so levied on, and the plaintiff shews no title to
it ; *James Day,* under whom the plaintiff claims, not having
had any. First, it does not appear, that *James Day* had any
*deed.* Secondly, if he had, it was not *recorded ;* and an un-
recorded deed is no evidence of title, except as against the
grantor and his heirs. *Willett* v. *Overton,* 2 *Root* 338. *French*
v. *Gray,* 2 *Conn. Rep.* 92.

Hosmer, Ch. J. The case presents three questions for
determination.

1. The judgment upon which the defendant's execution
issued, and by the levy of which the defendant claims title to
the land in question, is insisted by the plaintiff to be fraudu-
lent. It was obtained on a book debt, the items of which
were spread over a number of years. The fraud in the
judgment, if it existed, was founded on the book debt; for if
that was really due, the objection falls to the ground. To
shew that it was fraudulent, the plaintiff offered evidence to
prove, that at the time a writ was taken out, for the collec-
tion of the debt on book, the defendant obtained two other

attachments on promissory notes, given without any consideration, and to cover the property in question. This testimony, thus offered, was rejected; and the propriety of this decision raises the first question in the case.

If it had been material to prove a fraudulent purpose in relation to the notes merely, the evidence, undoubtedly, would have been admissible. But that was not the point before the court. It was specifically this; whether the book debt was fraudulent. It is no legitimate consequence, that the debt on book was fictitious, because the notes were without consideration; nor could any fair or reasonable presumption be deduced from such premises. The case of *Preston* v. *Griffin*, 1 *Conn. Rep.* 393. has established this principle; " that it is not competent to prove, that other conveyances, made at other and different times, were fraudulent, to raise a presumption that the sale in question was fraudulent; but conveyances of other property, *made at the same time with that in question*, may be given in evidence in order to shew a combination to dispose of the property with a fraudulent intent; or to shew, that a *bona fide* consideration was not paid for the whole; or it may be shewn, that any one of these *contemporaneous* conveyances was fraudulent, to shew, or raise a presumption, that the conveyance in question was fraudulent." The analogy is perfect between contracts not contemporaneous and conveyances of the same description; and the legal result, necessarily, must be the same. If, instead of bringing his action on book debt, the defendant had founded it on a bond or note, executed ten years before the attachment, no one would pretend, that the contracts fraudulently made at the date of the attachment, would furnish any proof relative to the antecedent security. Between this case and the one before the court there is not the slightest difference. The previous security cannot be affected, by a subsequent fraud; and the fact that writs of attachment were instituted, at the same time, on the book debt and on the notes, furnishes no evidence applicable to the former. The book debt might be perfectly fair, and the creditor bring his suit for it, at the time when he preferred other suits on invalid securities.

It has been argued, that the object of the testimony offered, was, to shew a combination for the purpose of defrauding creditors; and if such testimony were relevant, the competency of it could not be disputed. The real objection is to

*New-London,*
July,
1821.

Eells
*v.*
Day.

its relevancy ; and on the plaintiff it devolves to shew, that mere proof of combination would invalidate every claim put in suit. I cannot accede to this principle ; and am satisfied, that the validity of the book-debt cannot be impaired, or affected, by such testimony. I have dwelt at greater length than was necessary on this point ; as the second objection made is unquestionably fatal to the defendant's title.

2. The land levied on was not in the return on the execution, either located or described. The town in which the land lies, and a description of it, by metes and bounds, are indispensible requisites. It is unnecessary to have recurrence, for the requisites in this particular, to the doctrine of *Westminster-Hall,* or to that of the other states ; although the same certainty is, I believe, universally required. *Sparrow* v. *Mattersock* & al. *Cro. Car.* 319. *Pullen* v. *Birbeak, Carth.* 453. *Barnes* & al. v. *Billington* & al. 4 *Day* 81. 86. It is said by *Holt,* Ch. J. in the case in *Carthew,* " If upon an *elegit* the sheriff deliver a moiety of an house without metes and bounds, such return is ill, and shall be quashed for uncertainty." In this state, the uniform and immemorial usage, so far as I can ascertain it, has ever been to return the property levied on, by pointing out its location, and giving it definite boundaries. Precise certainty in this particular is necessary, that the creditor may know his land, and be free from the hazard of needless litigation on this subject ; and that others, who are interested in making enquiry, by an examination of the records, may acquire accurate information. The cases cited relative to the description necessary in deeds, and in the action of ejectment, have no bearing on this question, as they depend on very different principles. The return, in relation to the land in question, is in these words : " One other lot, containing four acres and one hundred rods, be the same more or less." The town in which it lies, and the boundaries, are both omitted ; and therefore, the return is fatally defective.

3. The charge of the judge on this point was, undoubtedly, incorrect ; and it is unquestionably clear, that the defendant has no title to the premises demanded. Notwithstanding this, he contends, that from the motion it appears, the plaintiff has no title ; and if so, there is no ground to set aside the verdict in his favour. This leads to a consideration of the third point made in the case.

The plaintiff claims title under the levy of an execution

*New-London,* on the land in question, as being the property of *James Day.*
July, To substantiate a title in *James Day*, the plaintiff offered
1821. evidence to prove, that *Day* purchased the lot of *John Water-
man*, and paid for it; but he adduced no proof, that *Day*
Eells had received a deed from *Waterman;* and it was admitted,
*v.* that no such deed appeared on the records of the town.
Day. The substance of the transaction results merely in this; that
*Day* has a right, if he can prove the contract of *Waterman*,
to recover damages of him, for the non-performance of his
agreement; or to enforce a specific execution of it, in chan-
cery; but that he has no legal title; and, of consequence,
that the plaintiff took nothing, by the levy of his execution.

PETERS, CHAPMAN and BRAINARD, Js. concurred.

BRISTOL, J. thought the evidence offered by the plaintiff
was admissible, as conducing to prove a previous fraudulent
agreement. On the other points he concurred.

New trial not to be granted.